UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                                Case No. 8:10-bk-02014-MGW
                                                                      Chapter 7
Ronda L. Layton,

      Debtor.
_____/

**MEMORANDUM OPINION ON**
**UNITED STATES TRUSTEE'S MOTION TO DISMISS**

Bankruptcy Code § 707(b)(1) provides for the dismissal or voluntary conversion of a "case *filed* by an individual debtor *under* this chapter [i.e., chapter 7] whose debts are primarily consumer debts … if [the Court] finds that the granting of relief would be an abuse of the provisions of [chapter 7]."[1] A presumption of abuse arises where a chapter 7 debtor fails the Means Test.[2]

It is undisputed in this case that the Debtor fails the Means Test and a presumption of abuse arises. However, the Debtor contends that § 707(b) is not applicable here because she did not *file* her petition *under* chapter 7. Instead, the Debtor filed her petition under chapter 13, but later converted the case when she could not afford to fund her chapter 13 plan. Thus, the issue before the Court is whether § 707(b) applies

---

[1] 11 U.S.C. § 707(b)(1)(italics added).

[2] 11 U.S.C. § 707(b)(2). *See, e.g., In re Ralston*, 400 B.R. 854, 858-59 (Bankr. M.D. Fla. 2009).

to debtors who originally filed their case under chapter 13 and later convert the case to chapter 7.[3]

Several courts have previously addressed this issue, and two lines of precedent have developed. The majority position is the so-called "common sense" view, which holds that converted cases are subject to § 707(b) because Congress intended for the Means Test to be applied in all chapter 7 cases.[4] In contrast, a significant minority of courts taking up the issue have opted for the "plain language" view, holding that § 707(b) does not apply to converted cases because such cases have not been *filed under* chapter 7.[5]

Both positions cite anomalies within the Bankruptcy Code and the accompanying Rules that would occur if the opposite view were to prevail.[6] Unfortunately, these anomalies are not exclusive to a particular view and are readily existent regardless of the position the Court takes. However, for reasons mentioned herein, the Court concludes that the "plain language" view is the better interpretation of the statute. Based on this

---

[3] United States Trustee's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. §§ 707(b)(1) and (3) (Doc. No. 84) ("Motion").

[4] *See*, *e.g.*, *In re Perfetto*, 361 B.R. 27 (Bankr. D.R.I. 2007); *In re Kellett*, 379 B.R. 332 (Bankr. D. Ore. 2007); *In re Lassiter*, 2011 WL 2039363 (Bankr. E.D. Va. 2011).

[5] *In re Fox*, 370 B.R. 639 (Bankr. D.N.J. 2007); *In re Dudley*, 405 B.R. 790 (Bankr. W.D. Va. 2009); *In re Ryder*, 2008 WL 3845246 (Bankr. N.D. Cal. 2008).

[6] *Compare Perfetto*, 361 B.R. at 31 (noting various conflicts with the Bankruptcy Rules under "plain language" interpretation), *with Fox*, 370 B.R. at 645 (noting impossibility of dual compliance with §§ 342(d) and 707(b) under "common sense" interpretation).

conclusion, the Court will deny the Motion to Dismiss to the extent it relies on a finding of abuse arising under § 707(b)(1).[7]

*Factual Background*

On January 29, 2010, the Debtor filed her petition under chapter 13 of the Bankruptcy Code. The Court subsequently confirmed the Debtor's chapter 13 plan, which provided for the abandonment of the Debtor's undersecured homestead and a 100% payout to the Debtor's unsecured creditors. Unfortunately, the Debtor lost her job following the confirmation of her plan and was unable to make timely payments to the chapter 13 Trustee. As such, on December 7, 2011, the Debtor voluntarily converted to a chapter 7 case in accordance with § 1307(a) and subsequently amended her schedules to reflect her unemployment.

Following the conversion, the Debtor was fortunate enough to find a new position and became re-employed prior to receiving her chapter 7 discharge. However, pursuant to this new employment, the Debtor now has disposable monthly income of at least $1,282.94 — an amount far in excess of that allowed under the Means Test. Accordingly, the Trustee has moved to dismiss the case pursuant to § 707(b)(1).

---

[7] The United States Trustee ("Trustee") has also raised the issue of whether the case should be dismissed for bad faith under 11 U.S.C. § 707(b)(3). The Court previously indicated in open court that the issue of dismissal under § 707(b)(3) may be considered separately. However, upon further reflection, the Court now concludes that bi-furcation is not necessary. Like the Means Test, § 707(b)(3) is not a stand-alone dismissal provision. Instead, § 707(b)(3) is merely a guide for what constitutes abuse under § 707(b)(1). Because the Court concludes that § 707(b)(1) does not apply in this case, the Trustee cannot prevail on the § 707(b)(3) argument.

*Conclusions of Law*[8]

Section 707(b)(1) of the Bankruptcy Code provides in relevant part that:

> After notice and a hearing, the court … may dismiss a case *filed by an individual debtor under this chapter* whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of [the Bankruptcy Code], if it finds that the granting of relief would be an abuse of the provisions of [chapter 7].[9]

The section does not appear to be ambiguous on its face.[10] A plain and rational interpretation suggests that an individual debtor must have voluntarily filed his or her original petition under chapter 7 in order for § 707(b) to apply. Despite this, several courts have framed sophisticated arguments against the plain language application of the statute in order to comply with purported legislative intent.

The arguments for and against both interpretations are discussed below. The first two arguments could be grouped with the "common sense" view in that they clearly aim to apply § 707(b) to all chapter 7 cases whether originally filed under chapter 7 or filed under another chapter and then converted to chapter 7. However, the Court will categorize them as hybrid arguments because, although they arrive at the "common sense" conclusion, they purportedly base their conclusion on literal compliance with the language of the statute.

---

[8] The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

[9] 11 U.S.C. § 707(b)(1) (emphasis added).

[10] *See, e.g., In re Perfetto*, 361 B.R. 27, 29 (Bankr. D.R.I. 2007) (before eventually opting for the "common sense" view, the court found that "a look at the statute makes it clear that § 707(b) is not at all ambiguous").

The third argument is what the Court considers to be the true "common sense" approach. At its heart, this argument implies that the BAPCPA[11] amendments were poorly drafted and that a court should apply them in line with the intent of the drafters, rather than adhering to the plain meaning of the statute. Unlike the hybrid argument, the true "common sense" argument readily concedes that a plain meaning application of the statute would not lead to the result it advocates. Lastly, the Court will address the "plain language" argument and the reasons for adopting it.

1. The Hybrid Arguments[12]

The first hybrid argument leading to the "common sense" result is the grammatical rule of last antecedent. Under this rule, "[a] limiting clause or phrase ordinarily is to be read as modifying only the noun or phrase it immediately follows."[13] As applied to § 707(b)(1), the rule would limit the applicability of the word "filed" to the directly ensuing noun "debtor."[14] Thus, as long as the case at issue was filed by an individual debtor with primarily consumer debts, those courts following the rule of last antecedent would apply § 707(b)(1), regardless of the chapter under which the case was filed.

---

[11] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 119 Stat. 23 (2005) ("BAPCPA").

[12] *See, e.g.*, *Justice v. Advanced Control Solutions* (*In re Justice*), 2008 WL 4368668, *4 (W.D. Ark. 2008); *In re Kerr*, 2007 WL 2119291, at *3 (Bankr. W.D. Wash. 2007). *See also In re Lassiter*, 2011 WL 2039393, at *4 (Bankr. E.D. Va.); *Branigan v. Bateman* (*In re Bateman*), 515 F.3d 272, 277 (4th Cir. 2008).

[13] *Justice*, 2008 WL 4368668, at *4 (citing *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 342-43 (2005)).

[14] *Id.*

This Court is not persuaded that the rule of last antecedent can be used in interpreting this statutory language. Applying the last antecedent rule in this fashion creates a strange irony in that it presupposes the drafters took great care and precision in drafting the language of § 707(b), but simultaneously ignores the bulk of superfluous language left in the wrath of its interpretation.[15] This is because under the last antecedent approach, the phrase "under this chapter"[16] adds nothing substantive to the statute because § 103(b) already limits the applicability of § 707(b) to chapter 7 cases.[17] Because "courts should generally disfavor interpretations of statutes that render language superfluous,"[18] the Court concludes that it is not appropriate to follow the last antecedent approach in interpreting: "a case filed by an individual debtor under this chapter…."[19]

In a similar vein, some courts utilizing the hybrid approach have re-defined the word "filed" to mean "to enter (e.g., a legal document) on public official record."[20] Under this expansive definition, a case is "filed" under chapter 7 when a motion to convert is filed. As a result, cases are deemed to be filed under chapter 7 for § 707(b) purposes when they are converted. Once again, this argument in furtherance of a "common sense" conclusion encounters the problem of rendering language superfluous.

---

[15] *See In re Dudley*, 405 B.R. 790, 793 (W.D. Va. 2009).

[16] 11 U.S.C. §707(b)(1).

[17] *See* 11 U.S.C. § 103(b). *See also Dudley*, 405 B.R. at 793.

[18] *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992).

[19] 11 U.S.C. § 707(b)(1).

[20] *In re Kerr*, 2007 WL 2119291, at *3 (Bankr. W.D. Wash. 2007) (citing WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 477 (1988)).

If "filed" meant something other than the initial filing, the word would lose all substantive contribution to the statute. As the court in *In re Dudley*[21] noted, the statute would have the same substantive meaning if "filed" was stricken and it simply said "under this chapter."[22]

Moreover, this definition of "filed" is contrary to the word's settled meaning in other chapter 7 contexts. As the court in *In re Fox* has correctly noted, the words "filed" and "filing" refer to the initial petition filing in §§ 342(d), 707(b)(3), 707(b)(4)(A), 707(c)(2) and 707(c)(3).[23] The normal rule of statutory construction requires that "identical words used in different parts of the same act are intended to have the same meaning."[24] This Court sees no reason in the present case to sway from this fundamental canon and therefore concludes that "filed" within § 707(b)(1) refers to the initial filing of the petition and does not include every subsequent filing made by the Debtor.

## 2. The Common Sense Argument

The court in *In re Perfetto*[25] is most representative of the "common sense" argument in finding that "a look at the statute makes it clear that § 707(b) is not at all ambiguous,"[26] but nevertheless noting that exceptions to the plain meaning rule apply

---

[21] *Dudley*, 405 B.R. 794-95 (W.D. Va. 2009).

[22] *Id.*

[23] *In re Fox*, 370 B.R. 639, 644 (Bankr. D.N.J. 2007).

[24] *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 570 (1995) (citing *Dep't of Revenue of Oregon v. ACF Indus., Inc.*, 510 U.S. 332, 342 (1994)).

[25] *In re Perfetto*, 361 B.R. 27 (Bankr. D. R.I. 2007).

[26] *Id.* at 29.

where (1) such application would be contrary to legislative intent or (2) would lead to absurd results.[27]

Courts applying the "common sense" interpretation hold that both of the above exceptions are applicable in the present context. First, courts correctly note that a primary goal of the BAPCPA amendments was to prevent chapter 7 discharges in cases where debtors possessed disposable income that could be paid to creditors.[28] Congress indisputably acted in furtherance of this goal by creating the Means Test and by making successful passage of the Means Test a general prerequisite to receiving a chapter 7 discharge. As a result, the "common sense" courts opine that allowing debtors to avoid the Means Test by filing chapter 13 petitions and subsequently converting to chapter 7 would make a mockery of the system and lead to absurd results.[29] Namely, a debtor could receive an otherwise impermissible discharge by playing fast and loose with the bankruptcy process.[30] In perhaps the most substantive argument for a "common sense" interpretation, the courts adopting that approach have also cited Bankruptcy Rule

---

[27] *Id.* (citing *Ron Pair Enters. Inc.*, 489 U.S. 289, 242 (1989); *In re Sours*, 350 B.R. 261, 266 (Bankr. E.D. Va. 2006)).

[28] *See* H.R. Rep. No. 109-31, pt. 1, at 2 (2005) (Congress "intended to ensure that debtors repay creditors the maximum they can afford").

[29] *In re Kellett*, 379 B.R. 332, 338 (Bankr. D. Ore. 2007).

[30] *Id. See also Perfetto*, 261 B.R. at 30. In fact, the facts of the *Perfetto* case suggest that the debtor was obviously trying to abuse the purported Means Test loophole. There, the debtor filed her chapter 13 petition and almost immediately converted her case to chapter 7 without any explanation as to why she was doing so. The only logical inference was that the debtor was actively trying to avoid the Means Test, which would have otherwise forbidden her from receiving her chapter 7 discharge.

1019(b), which provides an extension of time for a trustee to file a motion to dismiss under § 707(b) in cases converted to chapter 7.[31]

Thus, while "common sense" courts readily acknowledge anomalies in other sections of the Code created by their interpretation,[32] they have balanced all the factors and concluded that their reasoned understanding of congressional intent should trump these other issues. Consistent with this, the court in *Perfetto*[33] suggested that it would not apply § 707(b) uniformly, and would instead apply a totality of the circumstances test in cases where its application of § 707(b) would create an unreasonably unjust result for converted debtors.[34]

### 3. The Plain Language Argument

In contrast to the long and analytical analysis required by the "common sense" interpretation, the so-called "plain language" view is straight forward. In sum, the statute says what it says and should be applied accordingly.[35] Despite arguments to the contrary, the Code unambiguously requires a case to be filed under chapter 7 in order for § 707(b) to apply.[36]

---

[31] Fed. R. Bankr. P. 1019(b). *See also Perfetto*, 361 B.R. at 31.

[32] *See, e.g.*, *Perfetto*, 361 B.R. at 31.

[33] *Id*.

[34] *Id.*

[35] *In re Fox*, 370 B.R. 639 (Bankr. D.N.J. 2007).

[36] *Id.* at 643. *See also In re Dudley*, 405 B.R. 790, 793 (W.D. Va. 2009); *In re Ryder*, 2008 WL 3845246 (N.D. Cal. 2008).

Due to the simplicity of this argument, most courts adopting the "plain language" view spend a large portion of their opinion explaining why they are not adopting the contrary view. This Court will follow suit.

The overarching concern of the courts adopting the "common sense" approach is that debtors will game the system in order to achieve an unintended and explicitly forbidden result. However, as several courts have noted, there are other avenues for dealing with such bad-faith debtors.[37] First, the "filed under chapter 7" issue arising under § 707(b) does not arise in a motion filed under § 707(a). The latter section permits a court to dismiss any chapter 7 case for cause.[38] While there is precedent that holds that cause for dismissal under § 707(a) does not include filing a chapter 7 case in bad faith,[39] there are also cases holding the contrary view.[40]

However, the better alternative for dealing with the so-called "abuse loophole" is the Court's discretion to dismiss a case pursuant to § 105(a).[41] As the Supreme Court in *Marrama* has stated, bankruptcy judges are provided "broad authority … to take any action that is necessary or appropriate 'to prevent an abuse of process' described in §

---

[37] *See Dudley,* 405 B.R. at 799-801; *Ryder*, 2008 WL 3845246, at *2.

[38] 11 U.S.C. § 707(a). *See also Dudley*, 405 B.R. at 800.

[39] *See, e.g., Nearly v. Padilla* (*In re Padilla*), 222 F.3d 1184, 1191 (9th Cir. 2000) (holding that bad faith is not a cause for dismissal under § 707(a)).

[40] *See In re Bilzerian,* 258 B.R. 850 (Bankr. M.D. Fla. 2001) (citing *Indus. Ins. Servs., Inc. v. Zick* (*In re Zick*), 931 F.2d 1124, 1126-27 (6th Cir. 1991) (holding that lack of good faith warrants dismissal under § 707(a))).

[41] 11 U.S.C. § 105(a). *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007).

105(a) of the Code."[42] The feared "abuse loophole" clearly falls within the abuse of process discretion contemplated by *Marrama* and §105(a). In attempting to utilize the loophole, a bad-faith debtor would file under chapter 13 and subsequently convert to chapter 7 for no legitimate reason.[43] Such action may or may not be "an abuse of the provisions" of chapter 7.[44] However, it is clearly an abuse of the bankruptcy process. As such, courts could dismiss such cases under § 105(a) as justice would require. Lastly, even absent application of § 105, every federal court has the inherent power to sanction abusive litigation practices.[45]

In light of these alternatives, the reasons for adopting the "common sense" approach appear to be heavily outweighed by the negative statutory and practical consequences of such approach. Among the anomalies of the "common sense" approach is the statutory conflict between § 707(b) and § 342(d).[46] The latter section provides that the clerk "shall give written notice to all creditors not later than 10 days *after the date of the filing of the petition* that the presumption of abuse has arisen" under § 707(b).[47] If the debtor at issue does not convert his or her case almost immediately, compliance with both

---

[42] *See Marrama*, 549 U.S. at 375.

[43] For an example of this fact pattern, see *In re Perfetto*, 361 B.R. 27 (Bankr. D.R.I. 2007).

[44] 11 U.S.C. § 707(b). More logically, the abuse contemplated herein actually occurs under the provisions of chapter 13. The debtor is not subjected to the Means Test in chapter 13, so they file the 13 with no intention of proceeding thereunder. Thus, the real provision being abused in this scenario is § 1307(a), granting the right to convert to chapter 7. 11 U.S.C. § 1307(a).

[45] *See Chambers v. NASCO*, 501 U.S. 32 (1991).

[46] 11 U.S.C. § 342(d).

[47] *Id. See also In re Fox*, 370 B.R. 639, 645 (Bankr. D.N.J. 2007).

§ 342(d) and the "common sense" version of § 707(b) is impossible. A clerk cannot send notice of a failed Means Test within 10 days of the filing of a petition in a case where the Means Test may not be applicable until 11 or more days after the original petition has been filed. This scenario is present in this case as the Debtor converted her case almost two years after the initial filing. Some courts adopting the "common sense" view have disregarded this statutory anomaly as mere "sloppy drafting."[48] The "plain language" view avoids the anomaly altogether.

Next, a practical Means Test issue exists that would act to the detriment of numerous debtors were the court to adopt the "common sense" view. Namely, the Means Test requires a mechanical computation of the debtor's current monthly income for purposes of determining presumed abuse.[49] Current monthly income is a defined term requiring the court to consider the debtor's taxable income during the 6-month period ending on "the last day of the calendar month immediately preceding the date of the commencement of the case."[50] Thus, in order for a court to consider the current monthly income of a converted debtor, it may have to look to financials that are months or even years old. It is highly suspect whether such outdated financials would provide a reasonable reflection of a debtor's financial position, and the more probable result is that good-faith chapter 13 debtors will be unable to proceed under either chapter.

---

[48] *In re Kerr*, 2007 WL 2119291, at *4 (Bankr. W.D. Wash. 2007); *In re Kellett*, 379 B.R. 332, 337 (Bankr. D. Ore. 2007).

[49] 11 U.S.C. § 707(b)(2)(A)(i).

[50] 11 U.S.C. § 101 (10A). *See, e.g., In re Perfetto*, 361 B.R. 27, 31 (Bankr. D.R.I. 2007).

As one court has feared, this may result in a debtor being cycled through "a perpetual 'do loop' of failures in chapter 13, followed by brief tenures in chapter 7, followed by further re-conversions to chapter 13."[51] In realizing these hypothetical arguments, the *Perfetto* court suggested that it could adopt a totality of the circumstances approach to selectively cure unjust results.[52] Conversely, the *Kellett* court suggested that the Trustee should exercise good-faith discretion in bringing § 707(b) motions to dismiss.[53] Unfortunately, the court in *Fox* is correct that there is no statutory authorization for adopting the *ad hoc* approach offered by the *Perfetto* court.[54] Moreover, there is no way to assure that a trustee will selectively pursue Means Test failures. In acknowledging the potential for incredibly unjust results stemming from their interpretation, the "common sense" courts have offered alternative discretionary measures to be utilized by a court or trustee. This Court concludes that the better view is to follow the "plain language" approach and utilize the Court's discretion to dismiss bad-faith filers on other grounds.

Despite determining that the "plain language" view is the better interpretation of the statute, the Court does not ignore an unavoidable conflict arising from such a determination. Bankruptcy Rule 1019(2) sets out a time extension for filing § 707(b)

---

[51] *Kellett*, 379 B.R. at 339.

[52] *Perfetto*, 361 B.R. at 31.

[53] *Kellett*, 379 B.R. at 339.

[54] *In re Fox*, 370 B.R. 639, 648 (Bankr. D.R.I. 2007).

motions to dismiss where a case has been converted to chapter 7.[55] The unavoidable conclusion is that Rule 1019(2) is largely superfluous and moot under the Court's adoption of the "plain language" interpretation of § 707(b). There is simply no substantive benefit to extending the time to file a § 707(b) motion in a converted case if § 707(b) does not apply to debtors in converted cases. However, if the court must choose between an unavoidable conflict of statutes or an unavoidable conflict between a statute and a rule, the Court concludes that the latter is the better choice.

Importantly, the statute enabling the adoption of rules of practice and procedure in bankruptcy cases under title 11 specifically provides: "Such rule shall not abridge, enlarge, or modify any substantive right."[56] The bankruptcy rule enabling statute does not have the "supersession clause" contained in the enabling statute for the Federal Rules of Civil Procedure.[57] The latter clause provides: "All laws in conflict with such rule shall be of no further force or effect after such will have taken effect."[58] Given Congress express removal of this clause in the bankruptcy context,[59] it is clear that a bankruptcy rule is not conclusive regarding the application of a bankruptcy statute. In contrast, a

---

[55] Fed. R. Bankr. P. 1019(2).

[56] 28 U.S.C. § 2075.

[57] *Compare* 28 U.S.C. § 2072(b) *with* 28 U.S.C. § 2075. The supersession clause was removed from the bankruptcy rule enabling statue in 1978. *See* Bankruptcy Act of 1978, Pub. L. 95-598.

[58] 28 U.S.C. § 2072(b).

[59] 28 U.S.C. § 2075.

bankruptcy rule is expressly void to the extent it abridges, enlarges, or modifies a substantive right.[60]

*Conclusion*

Section 707(b) unambiguously requires a case to be filed under chapter 7 in order for the section to be applicable.  A case that is converted to chapter 7 is not filed under chapter 7; it is instead filed under the chapter in which it originated.[61] Given this plain language, the Court concludes that a plain language interpretation of § 707(b) is the better reasoned approach to interpreting its meaning. Accordingly, the court will deny the Motion to the extent it is based on § 707(b).

A separate order denying the Motion will be entered consistent with this Memorandum Opinion.

**DATED** in Chambers at Tampa, Florida, on October 19, 2012.

_____
Michael G. Williamson
United States Bankruptcy Judge

**Nicole W. Peair, Esq.**
*Office of the United States Trustee*

**Joseph B. Battaglia, Esq.**
**The Golden Law Group**
*Counsel for Debtor*

---

[60] *Id. See also In re Fox*, 370 B.R. at 645 at n 4.

[61] Section 348 provides that "the conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted."  Section 348 does not change the date of the filing of the case, nor does it change the fact that a petition was originally filed under another chapter.